JS-6

1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| BRUCE H. BARTON,<br><br>        Plaintiff,<br><br>     v.<br><br>ADT SECURITY SERVICES PENSION PLAN, a pension plan, TYCO INTERNATIONAL MANAGEMENT COMPANY, as plan sponsor, TYCO INTERNATIONAL MANAGEMENT COMPANY, LLC ADMINISTRATIVE COMMITTEE, as plan administrator, and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No. CV 12-06971 BRO(CWx)<br><br>**FINDINGS OF FACT AND CONCUSIONS OF LAW AFTER COURT TRIAL** |

# I.      __INTRODUCTION__

This action is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. § 1001, *et seq.*).  Plaintiff Bruce Barton seeks: (1) declaratory relief, that he is entitled to a pension; (2) pension benefits based upon his employment with American District Telegraph Company, ("ADT") from 1967 to 1986; and, (3) ) recovery of statutory penalties under 29 U.S.C. § 1132(c)(1) and 29 CFR § 2575.502(c)(1).  Defendants contend:  (1) Plaintiff is not entitled to a pension because there are many subsidiaries of ADT, and Plaintiff never established that he was a participant under the 1968 or 1985 ADT Pension Plans; and (2) he is not entitled to statutory damages because plan administrators produced all legally appropriate documents to Plaintiff.  After consideration of the parties' trial briefs, oral arguments, the evidence in the Administrative Record,[1] and the extrinsic evidence offered by both sides at trial in the case, the Court makes the following Findings of Fact and Conclusions of Law.[2]

# II.     __FINDINGS OF FACT__

## A.      __Plaintiff's Work History__

Plaintiff Bruce Barton is a 68 year-old male.  In late 1967, American District

---

[1] The documents considered by the Employee Benefits Committee in denying Plaintiff's claim is Trial Exhibit H.  The documents considered by the Employee Benefits Committee regarding Plaintiff's appeal is Trial Exhibit M.  Because these are the materials upon which the committee based its denial of pension benefits, these exhibits constitute the administrative record.

[2] Any finding of fact which constitutes a conclusion of law is hereby adopted as a conclusion of law.

Telegraph Co ("ADT") of Maine hired Barton as a Serviceman 1.  (Decl. of Bruce Barton, ¶6, Ex. 1 ; Trial Ex. M at 1.)   From 1966 to 1971, while employed at ADT of Maine, Barton participated in United States Marine Reserve.  (Trial Ex. M at 14-15).   In December 1968, Barton worked for Ginn-Marvin Moving & Storage Co. (Trial Ex. M at 15.).  In 1973, records indicate that American District Telegraph Co. of Massachusetts paid in FICA earnings for Barton.  (Trial Ex. M at 16.)  The "EIN"[3] on the records differs from that of ADT of Maine.  (*cf.* Trial Ex. M at15-16.)    All references reflect an address of "% ATT Tax Dept., 1 World Trade Center, Suite 9200, New York, NY".  (*See generally* Trial Ex. M.)   From 1974 to 1976, Barton's records show FICA wages paid in by "American District Telegraph Co.," (*Id.*)  From 1977 to 1981, FICA earnings under Barton's name were received from "American District Telegraph Co. of Maine."    (*Id.* at 17.)   From 1982 to 1984, FICA withholdings were paid by "ADT Diversified Services Inc." (*Id.*)  The address listed was in Parsippany, New Jersey. (*Id.*)  A third EIN was listed. (*Id.*)   In 1985, Social Security documents provided by Barton show FICA withheld by "American District Telegraph Co. of Illinois".  (*Id.* at 18.)  The address listed was "% ATT Tax Dept" at the One World Trade Center address. (*Id.*)  A fourth EIN was listed. (*Id.*)   Part of 1986 showed earnings withholdings from "American District Telegraph Co.," (*Id.*) On September 11, 1986, Barton resigned his employment.   (Trial Ex. H at 32.)

---

[3]  The court presumes that "EIN" refers to the Employer Identification Number.

**B.**   **The Plan**

Given the breadth of Plaintiff's employment, multiple iterations of the American District Telegraph Company Pension Plan exist.  However, the pension plans relevant to these proceedings are American District Telegraph Company Pension Plan in effect on January 1, 1968 ("The 1968 Plan")[4] and January 1, 1985 ("The 1985 Plan").

1.   **The 1968 Plan**

Section 2(1) of The 1968 Plan defines "Company" as "American District Telegraph Company, and those controlled companies authorized by the Board of Directors to participate in the Plan."  (Trial Ex. C at 3.)  "Full Time Employee" refers to any person "customarily and regularly employed by the Company for not less than thirty-five (35) hours weekly ..." (*Id.* at 4, Sec. 2(7).)  The 1968 Plan also defined "term of employment" to mean "continuous employment in the service of the Company or of the Company and its controlled companies."   (*Id.* at 4, Sec. 2(9)(a).)  "Continuous service" was not further defined.  In order to receive a pension under The 1968 Plan, a male employee must reach a certain age and have a certain number of years of service.  (*Id.* at 6, sec. 5.)

The 1968 Plan also provides that six members from the Board of Directors

_____

[4] The 1968 Plan existed prior to the passage of the Employee Retirement Income Security Act of 1974.

shall be called the Employees Benefit Committee". (*Id.* at 5, sec. 4.)  The Employee

Benefit Committee is vested with the power to "determine conclusively for all

parties all questions arising in the administration of the Plan." (*Id.*)   The 1968 Plan

defines "any absence from the service without pay . . . shall be considered as a break

in the continuity of service ..." (Id. at 14, sec. 9(5).)     Person re-employed after a

break in service are considered employees of their re-employment date.  (Id. at 14,

sec. 9(5).)[5]

2.    **The 1985 Plan**

The 1968 Plan was amended and restated on at least one occasion prior to

1985.  However, The 1985 Plan guides the decision in this case based upon the

court's findings detailed below.[6]   The 1985 Plan defines "Company" as the

"American District Telegraph Company and such of its "Affiliated Companies as

have adopted the Plan and have been admitted to participation therein by the Board

. . .."   (Trial Ex. A, at 6, sec. 2.8.)  "Affiliated Company" means a company "which

is a member of a controlled group of corporations of which the American District

Telegraph Company is also a member."   (*Id.* at 5, sec. 2.2.)  The 1985 Plan defines

---

[5]   Any person reemployed for ten years after a break in service will be credited with their entire employment tenure, less any break in service.  (Trial Ex. C, at 15, sec. 9(5).)

[6]   Plaintiff's counsel argued in passing that ADT Security Services Pension Plan effective January 1, 2010 should apply because Plaintiff sought pension benefits in 2010.  However, Article III, Section A requires the person to be employed as of January 1, 2010.  (*See* Trial Ex. L at 20, Art. III, Sec. A.)  "Continuous Service" is defined as the completion of one hour after December 31, 1988.  (*Id.*)  Plaintiff does not contend that he was employed by ADT after 1986.  Therefore, the 2010 Pension Plan does not apply.

"continuous service".  For the period prior to January 1, 1976, "continuous service shall be that service determined under the terms of the Plan as it was constituted on December 31, 1975."  (*Id.*, sec. 2.9.)[7]  For periods of employment after January 1, 1976, "one year of Continuous Service shall be recorded for any Plan Year during which and Employee has 1,000 or more hours of service . . ."  (*Id.*, sec. 2.9(b)(i).)  Continuous service is not recognized where an employee records less than 1,000 hours.  (*Id.*, sec. 2.9(b)(ii).)  Less than 500 recorded hours is considered to be a break in service.  (*Id.*, sec. 2.9(b)(iii).)

All employees who were Participants in the Plan as of December 31, 1985 are included in The 1985 Plan.  (*Id.* at 11, sec. 3.1.)  In addition, all employees, who were not Participants previously shall become eligible if:  (1) they are 21 years old; and (2) "the completion of 1,000 Hours of Service during the twelve-month period immediately following his date of employment, "or if such employee does not complete 1,000 hours within the twelve-month period, one year of continuous service in any succeeding plan year."  (*Id.* at 12, sec. 3.2(b).)  "Credited Service" is defined in two ways.  First, "credited service" occurring prior to January 1, 1976 is computed according the plan as of December 1, 1975.  (*Id.* at 7, sec. 2.10(a).)  After January 1, 1976, "Credited Service" is calculated as the number of years where a Participant works 1,000 hours or more, excepting the years where the Participant

_____

[7]  The 1968 Plan was the applicable document on December 31, 1975.

BartonFindingsfnl.docx

joins and retires from the Plan, which is computed on a pro rata basis.  (*Id.* at 8, sec. 2.10(b).)   Paragraph 8.2 provides that if the "employment of a Participant is terminated before his Normal Retirement Date but after he has completed 10 or more years of Continuous Service" he shall receive retirement benefits at the retirement ages listed in section five of The 1985 Plan.  (*Id.* at 19, sec. 8.2.)   Like The 1968 Plan, The 1985 Plan states that the Employee Benefits Committee "shall have the primary responsibility and authority for the administration of the Plan, including the authority to interpret its provisions . . . to determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan . . ." (*Id.* at 31, sec. 14.2.)   All "interpretations, determinations and decisions" of the Benefits Committee is deemed conclusive.  (*Id.* at 33, sec. 14.7.)

### C.   **Plaintiff's Request for Pension Benefits**

In 2010, Barton inquired of Aon Hewitt, the Pension record keeper, about pension benefits.   On December 13, 2010, Linda Brown, Pension Benefit Administrator, replied stating that Aon Hewitt "could not find any information about your employment with ADT Security Services, Inc."  (Trial Ex. D at 2.)  Ms. Brown enclosed instructions regarding the pension claims and appeals procedures.  (*Id.*)  On or about October 3, 2011, Barton applied for pension benefits.  (Trial Ex. 9 at 1.)

In support of his claim, Barton included the following documents with his letter:  (1)  Linda Brown's letter dated December 13, 2010; (2) Linda Brown's June

BartonFindingsfnl.docx

24, 2011 letter indicating that the materials submitted by Barton did not indicate he had a pension; (3) Tyco Pension Services letter dated July 15, 2011 relating a call by Barton to the call center and advising Barton of how to file a claim for pension benefits; (4) R.B. Carey's November 11, 1977 letter congratulating Barton on his completion of "10 years of service as a member of the ADT organization;" (5) copies of key cards and identification cards; (6) Barton's undated letter to Aon Hewitt employee Joyce Guerrieri enclosing documents; (7) W-2 wage statements from 1980, 1981, 1982 and 1983 listing the employer as American District Telegraph Co. at the One World Trade Center address; (8) two pay stubs from 1981 and 1985 with the listing "American District Telegraph" at the bottom; (9) three Personnel Data Maintenance Forms for February 1, 1984, May 1, 1985 and February 3, 1986; (10) six pages of documents from the Social Security Administration reflecting an employer of American District Telegraph Co of Massachusetts, American District Telegraph Co of Maine, summarizing FICA withholding for 1968-1980; (Trial Ex. H at 8-29.)

In a letter dated January 10, 2012, Tyco International Management Company Administrative Committee ("The Committee") member Mindy Ebert-Feldman wrote Barton informing him of The Committee's denial of his claim for pension benefits. Ms. Ebert-Feldman first explained the documents which The Committee reviewed. (Trial Ex. 9.) In addition to the documents described above, The Committee also reviewed documents from Barton's pension file. Those included: (1) Barton's letter

to Ray Llewellyn dated September 11, 1986 resigning; (2)  A memorandum from Ray Llewellyn to the file dated September 12, 1986 acknowledging receipt of a company truck, tools and presumably an American Express credit card;[8]  (3) a one-page-document entitled Policies and Procedures regarding company truck usage; (4) a two-page Exit Interview Questionnaire listing a date of employment at "11/10/67"; (5) a two-page Telephone Conversation Record regarding pension benefits, dated July 6, 2011 wherein presumably Barton informs the employee that he wants his pension and she is "stonewalling;" (6) a portion of The 1968 Plan 1 previously; (7) portions of an "ADT Pension Plan" referencing 1983; and, (8) portions of The 1985 Plan listed above.  (Trial Ex. H at 32-56.)  Ms. Ebert-Feldman describes the relevant plan documents, namely The 1968 Plan and The 1985 Plan.  She details the relevant portions of each.  (Trial Ex. 9 at 2-3.)

Ms. Ebert-Feldman goes on to inform Barton of The Committee's decision.  It denies Barton's claim for a pension because

"there are  no Plan records indicating your eligibility for participation in the Plan, your actual participation in the Plan, or your eligibility for benefits under the Plan.  In addition, it was unclear from the information you provided whether you had a continuous term of employment or earned the required service to earn at least 10 Years of Continuous Service so as to be vested in a Plan benefit."

(*Id.* at 3.)  She specifies that Barton did not provide proof of continuous employment

---

[8]   The Court is unable to determine the exact items to which Llewellyn is referring because the Trial exhibits were redacted.  However, such items are irrelevant to the claims at issue here.

prior to 1976,  or proof of at least 1,000 hours of service after 1976 until 1986.  (*Id.* at 3-4.)  Finally, she details the process to appeal a denied claim.  (*Id.* at 4.)

On January 19, 2012, Barton wrote Ms. Ebert-Feldman requesting certain documents.  Specifically, Plaintiff requested copies of "all plan documents, records and other information, affecting the claim per your document concerning Applying for Benefits and claim and Appeal Procedures."  (Trial Ex. K at 2.)  Barton then proceeds to make specific requests for a "Tyco International Summary Plan Description Booklet of my own;" social security documents which Barton claims Tyco "seem[s] to have trouble associating with the list and my name . . .;"examples of pension benefit statements and application forms provided by the "service center." (*Id.*)  That same day, Barton requested a 60-day extension within which to file his appeal.  (*Id.* at 3.)

**D.**     **Plaintiff's Appeal of The Committee's Denial**

On February 21, 2012, Ms. Ebert-Feldman wrote Barton granting his 60-day extension.  (Trial Ex. J at 2.)  She also provided the following documents: (1)  a five page document entitled Claim 2011-6 ADT Security Services Pension Plan; Part A – Security Service;[2] (2)  Barton's October 3, 2011 letter to Tyco Pension Services; (3)

---

[2]   Ms. Ebert-Feldman testified that this document was prepared by their outside counsel.  Although she did not rely upon this document in reaching her decision, she does not know whether other committee members relied upon the document.  (RT 6/11/13 at p. 74, ll. 8-14; *see also* RT 6/11/13 pp. 65-74).

BartonFindingsfnl.docx

Linda Brown's letter dated December 13, 2010; (4) Linda Brown's June 24, 2011 letter indicating that the materials submitted by Barton did not indicate he had a pension; (5) Tyco Pension Services letter dated July 15, 2011 relating a call by Barton to the call center and advising Barton of how to file a claim for pension benefits; (6) R.B. Carey's November 11, 1977 letter congratulating Barton on his completion of "10 years of service as a member of the ADT organization;"  (7) copies of key cards and identification cards; (8) Barton's undated letter to Aon Hewitt employee Joyce Guerrieri enclosing documents; (9) W-2 wage statements from 1980, 1981, 1982 and1983 listing the employer as American District Telegraph Co. at the One World Trade Center address; (9) two pay stubs from 1981 and 1985 with the listing "American District Telegraph" at the bottom; (10) three Personnel Data Maintenance Forms for February 1, 1984, May 1, 1985 and February 3, 1986; (11) six pages of documents from the Social Security Administration reflecting an employer of American District Telegraph Co of Massachusetts, American District Telegraph Co of Maine, summarizing FICA withholding for 1968-1980; (12) Barton's letter to Ray Llewellyn dated September 11, 1986 resigning; (13)  A memorandum from Ray Llewellyn to the file dated September 12, 1986 acknowledging receipt of a company truck, tools and presumably an American Express credit card;  (14) a two-page Exit Interview Questionnaire listing a date of employment at "11/10/67"; (15) a two-page Telephone Conversation Record regarding pension benefits, dated July 6, 2011 wherein presumably Barton informs

the employee that he wants his pension and she is "stonewalling"; (16) portions of The 1968 Plan described previously; (17) portions of an "ADT Pension Plan" referencing 1983; (18) portions of The 1985 Plan listed above; (19) the entire 1968 Plan; and, (20) the entire 1985 Plan. (*Id.* at 8-133.)

On June 29, 2012, Ms. Ebert Feldman wrote Plaintiff communicating the result of his appeal. On behalf of the Tyco International Management Company, LLC Administrative Committee ("Appeal Committee"), she informed Barton that the Appeal Committee had denied his appeal. The Appeal Committee concluded that "there is no record of your participation in the Plan or of your eligibility to receive Plan benefits, and none of the information you submitted in your appeal indicates you participated in the Plan." (Trial Ex. N at 2.) She went on: "it is not clear from the information provided that you worked for a participating employer for the amount of time required to receive vesting service, which is a continuous term of employment from 1967 to 1976 and then at least 1,000 hours a year from 1976 until your termination of employment in 1986." (*Id.*)

Ms. Ebert-Feldman identified the documents considered by the Appeal Committee: (1) Barton's April 29, 2012 letter to Mindy Ebert-Feldman informing her that he obtained additional information from the Social Security Administration; (2) Ms. Ebert-Feldman's January 10, 2012 letter on behalf of The Committee denying Barton's claim; (3) two pages of identification cards; (4) R.B. Carey's

November 11, 1977 letter congratulating Barton on his completion of "10 years of service as a member of the ADT organization" and what appears to be an identification card; (5) 10 pages from the Social Security Administration, Itemized Statement of Earnings, detailed FICA withholdings described *supra.*; (6) two pay stubs from 1981 and 1985 with the listing "American District Telegraph" at the bottom; (7) W-2 wage statements from 1980, 1981, 1982 and1983 listing the employer as American District Telegraph Co. at the One World Trade Center address; (8) three Personnel Data Maintenance Forms for February 1, 1984, May 1, 1985 and February 3, 1986; (9) a two-page exit interview questionnaire; (10) Barton's letter to Ray Llewellyn dated September 11, 1986 resigning; (11) a Performance Appraisal Worksheet dated February 1, 1986; (12) a five-page untitled document detailing retirement benefits; and, (13) portions of The 1968 Plan described previously. (Trial Ex. M at 2-47.)

Ms. Ebert-Feldman described the plans used by the Appeal Committee in reaching its decision, namely The 1968 Plan and The 1985 plan. (Trial Ex. N at 3-4.) Specifically, she stated the definition of "Term of Employment" under the 1968 Plan as "continuous employment in the service of the company or of the company and its controlled companies." (*Id.*) "Break in Service" was also defined under The 1968 Plan as "any absence from service without pay . . ." (*Id.*) With respect to The 1985 Plan, Ms. Ebert-Feldman referred to the "Continuous Service" requirement in order for a pension to vest. (*Id.* at 4.) "Continuous Service" was defined as "1,000

13

or more Hours of Service."  (*Id.*)  A "break in service" occurred where an employee works fewer than 500 hours.  (*Id.*)

Ms. Ebert-Feldman concluded the letter by repeating the Appeal Committee's reasons for denying Barton's claim:

> there are no Plan records indicating your eligibility for participation in the Plan, your actual participation in the Plan, or your eligibility for benefits under the Plan.  You provided no documents indicating that you participated in the Plan or that you were owed a benefit under the Plan.  In addition it could not be determined from the Information you provided that you earned the requisite service to be vested in a benefit under the Plan.

(*Id.* at 4.)  Those conclusions were then explained in further detail.  (*Id.* at 5.)   She also informed Barton that the Appeal Committee's decision was final.  (*Id.*)

On August 13, 2012, Barton filed this lawsuit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. § 1001, *et seq.*).  (Dkt. 1.)  Plaintiff seeks:  (1) declaratory relief, that he is entitled to a pension; (2) pension benefits based upon his employment with American District Telegraph Company, ("ADT") from 1967 to 1986; and, (3)  recovery of statutory penalties under 29 U.S.C. § 1132(c)(1) and 29 CFR § 2575.502(c)(1).

## III.    CONCLUSIONS OF LAW

### A.    Declaratory Relief and Recovery of Pension Benefits

#### 1.    Standard of Review

ERISA permits an individual to challenge a denial of benefits in federal court.

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (citing 29 U.S.C. § 1132(a)(1)(B) ) ("*MetLife*")).[10]   Depending on the language and structure of an ERISA plan, a district court reviews a plan administrator's decision to deny benefits either *de novo* or for an abuse of discretion.   The district court reviews the determination "'under a *de novo* standard' unless the plan provides to the contrary." (*Id.* at 111) (quoting *Firestone Tire &  Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 706-07 (9th Cir. 2012).  The decision will be reviewed for an abuse of discretion, however, where "the plan provides to the contrary by 'granting the administrator or fiduciary *discretionary authority* to determine eligibility for benefits.'"  *Met Life*, 554 U.S. at 111 (quoting *Firestone*, 489 U.S. at 115)(emphasis in original); *Harlick*, 686 F.3d at 707 (citing *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006) (en banc)).

Courts apply this abuse of discretion standard even in cases where a conflict of interest exists, such as when the plan administrator is also the entity that pays plan benefits.  *MetLife*   at 111-12. The Court's application of an abuse of discretion standard must be "'tempered by skepticism' when the plan administrator has a conflict of interest in deciding whether to grant or deny benefits."  *Harlick*, 686 F.3d at 707 (quoting *Abatie*, 458 F.3d at 968-96)).  "In such cases, the conflict is a 'factor'

---

[10]    Plaintiff does not challenge the benefits denial under any other law.   This action arises only under ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1), which is the exclusive remedial scheme for relief with respect to a claim of entitlement to a benefit under a plan subject to ERISA.

in the abuse of discretion review" with the weight of that factor dependent "on the severity of the conflict." *Harlick*, 686 F.3d at 707 (citing *Abatie*, 458 F.3d at 968; *MetLife*, 554 U.S. at 108).  The most frequent conflict arises "when the same entity makes the coverage decisions and pays for the benefits." *Harlick*, 686 F.3d at 707 (citing *MetLife*, 554 U.S. at 108).

Several factors influence the weight given to the conflict factor in an abuse of discretion review.  The conflict is "more important . . . where circumstances suggest a higher likelihood that it affected the benefits decision." *MetLife*, 554 U.S. at 117; *Harlick*, 686 F.3d at 707.  The conflict is given more weight "if there is a 'history of biased claims administration.'" *Harlick*, 686 F.3d at 707 (quoting *MetLife*, 554 U.S. at 117).  Additional skepticism will apply for procedural irregularities under ERISA where "the administrator gave inconsistent reasons for a denial, failed to provide full review of a claim, or failed to follow proper procedures in denying the claim." *Id.* (citing *Lang v. Long-Term Disability Plan,* 125 F.3d 794, 798-99 (9th Cir. 1997); *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 (9th Cir 1999)).

The conflict, however, "is less important when the administrator takes 'active steps to reduce potential bias and to promote accuracy,' such as employing a 'neutral, independent review process,' or segregating employees who make coverage decisions from those who deal with the company's finances." *Id.* (quoting *MetLife*, 554 U.S. at 117); *Abatie*, 458 F.3d at 969 n.7.  Further, the Ninth Circuit views "the conflict with a 'low' 'level of skepticism' if there's no evidence of malice, of self

dealing, or of a parsimonious claims-granting history." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008).  In considering any conflict and applying the abuse of discretion standard, the Supreme Court has "emphasized under *Glenn*, 'a deferential standard of review remains appropriate even in the face of a conflict.'" *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 647 (9th Cir. 2011).  As the Ninth Circuit has made clear: "We now know that the administrator's decision cannot be disturbed if it is reasonable." (*Id.* at 676.)

In evaluating the specific decision of the claims administrator, the Ninth Circuit has cautioned that courts "may not merely substitute our view for that of the fact finder." *Id.* (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).  Proper abuse of discretion review examines whether the claims administrator's decision was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record."  This review applies "with the qualification that a higher degree of skepticism is appropriate where the administrator has a conflict of interest." *Solomaa*, 642 F.3d at 676.

Thus, as an initial matter, the 1968 Plan and 1985 Plan must be examined to determine whether the two plans vest the administrators with discretionary authority thereby invoking the deferential abuse of discretion review. Under the 1968 Plan, six members from the Board of Directors shall be called the "Employees Benefit Committee".  (Trial Ex. C at 5, sec. 4.)  The 1968 Plan confers upon Employee Benefit Committee the power to "determine conclusively for all

17

parties all questions arising in the administration of the Plan." (*Id.*)  The 1985 Plan states that the Employee Benefits Committee "shall have the primary responsibility and authority for the administration of the Plan, including the authority to interpret its provisions . . . to determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan . . ." (Trial Ex. A at 31, sec. 14.2.)    All "interpretations, determinations and decisions" of the Employee Benefits Committee is deemed conclusive.  (*Id.* at 33, sec. 14.7.)    Such language has been held to confer discretionary authority.  *See, e.g., Abatie*, 458 F.3d at 963 (responsibility for full and final determination of benefits); *Sherwood v. United Parcel Serv. Flexible Benefits Plan Short Term Disability (STD) Plan*, 156 Fed.Appx. 941, 941-42 (9th Cir. 2005) (discretionary authority to determine eligibility for benefits or to construe terms of the plan).  Accordingly, this court then applies an abuse of discretion standard.[11]

2.   **Whether the Committee Abused Its Discretion in Denying Barton Benefits**

The question then becomes whether the Committee abused its discretion when it denied Plaintiff pension benefits under The 1968 Plan and The 1985 Plan.  This court considers the conflict of interest as a factor as to whether the Committee abused its discretion.   This court views the conflict of interest with a low level of

---

[11] Because the court finds an abuse of discretion standard of review, it disregards the oral testimony presented in this case and considers only the Administrative Record.

BartonFindingsfnl.docx

skepticism because there is no evidence in the record to suggest that the conflict affected the Committee's decision.   Plaintiff has failed to connect the overall corporate and financial reporting structure of Tyco with its benefits decisions in a causal or meaningful way.  Further, Plaintiff has also failed to produce evidence of Tyco claims administrator having a history of "malice, self dealing, or . . . a parsimonious claims-granting history" in this case or any others.   Contrary to Plaintiff's assertion, the reasons for Tyco's denial of pension benefits remained the same.  There is no evidence of a history of biased claims administration.  There are no procedural irregularities present; Plaintiff received an extension, and was provided with an opportunity to present additional evidence.

The issue then turns upon whether the Committee's decision was reasonable. There is no evidence in the record that Plaintiff established that he was entitled to benefits under either the 1968 Plan or the 1985 Plan.  Under The 1968 Plan, 10 years of continuous service is required.   The1968 Plan does not define "continuous service" any further.  In order to receive benefits, The 1985 Plan mandates 10 years of continuous service as well.  The 1985 Plan defines continuous service as "one year of Continuous Service shall be recorded for any Plan Year during which and Employee has 1,000 or more hours of service . . ."  (Trial Ex. A, sec. 2.9(b)(i).).

Barton did not establish continuous service for a participating company.  The evidence he did present showed only that he was employed by ADT companies and other companies under the relevant time period.  In addition, the letter from R.B.

BartonFindingsfnl.docx

Carey congratulating Barton on his ten years of service does not prove that he is entitled to benefits.  The letter does not establish continuous service as defined by the 1968 Plan.  The employee pay stubs and W-2 tax forms provide only a snapshot that Barton worked for ADT companies during the months and years detailed on the exhibits.  He fails to show that he was employed by a participating ADT company for 10 years continuous years.  Nor does the letter establish that Barton worked for a participating company.  Evidence in the record shows that Barton worked for numerous ADT companies, as well as other organizations, during the relevant ten-year time period.

Even after applying a low level of skepticism based on the fact that TYCO both assesses eligibility and disburses funds, this Court cannot characterize The Committee's benefits denial decision as "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record."  *Salomaa*, 642 F.3d at 676.  To the contrary, The Committee consistently articulated its position that Barton had failed to show continuous service to a participating company for a period of 10 years.  The Committee reviewed the documents presented by Barton, as well as its own files and records.  The evidence presented, namely tax documents showing multiple names of ADT companies, a single letter thanking Barton for ten years of service to the "ADT organization", Barton's exit interview, paystubs for certain monthly periods, and W-2 forms for brief periods, create an inference only that Barton worked for a number of ADT entities during the time period.  Barton also

failed to produce any information regarding whether those entities were participating entities. Accordingly, the Committee did not abuse its discretion in denying Barton pension benefits.

**B.      Statutory Penalties**

ERISA provides for statutory penalties based upon a pension administrator's refusal to comply with ERISA's disclosure obligations. 29 U.S.C. § 1132(c)(1). In order to recover statutory penalties, Plaintiff bears the burden of proving that he made a written request of the plan administrator for documents, that the plan administrator failed to provide such documents within 30 days and that he is a plan "participant" for purposes of ERISA § 502(c). *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Participant" includes those persons who have a "colorable claim" to benefits under the plan. *Firestone*, 489 U.S. at 118.

Here, in order to invoke statutory penalties, Barton must show that has a colorable claim to prevail on his ERISA suit. Because he did not prevail on his ERISA suit, he lacks standing to assert a violation of ERISA's disclosure requirements. *Johnson*, 356 at 1077.

Even assuming a violation of ERISA's disclosure requirements, the decision to impose sanctions rests in "sound discretion" of the trial court. 29 U.S.C. §1132(l). *Hemphill V. Estate of Ryskamp*, 619 F. Supp. 2d 954, 975 (E.D. Cal. 2008) specifies four factors a court can take into account in exercising its discretion under ERISA

§ 502 (c): (1) "bad faith or intentional conduct on the part of the administrator; (2) the length of the delay; (3) the number of requests made and documents withheld; (4) and the existence of any prejudice to the participant or beneficiary." *Hemphill*, 619 F. Supp. 2d at 975-976.

> Although prejudice is not required to prevail on a section 1132(c) penalty claim, most courts do inquire as to whether the claimant has suffered some type of prejudice before exercising the discretion vested in them under section 1132(c).

*Kaiser Permanent Employees Pension Plan v. Bertozzi*, 849 F. Supp. 692, 702 (N.D. Cal. 1994).

On January 19, 2012, Plaintiff wrote Ms. Ebert-Feldman and requested certain documents. In his pointed letter, Barton sought "all plan documents, records and other information affecting the claim per your document concerning Applying for Benefits and Claim and Appeal Procedures." (Trial Ex. K, p.2.) Specifically, Barton requested: (1) Tyco International Summary Plan Description booklet; (2) Tyco's entire copy of pages 1 through 4 of the Social Security Form SSA-7005; (3) an example of a pension benefit statement and written evidence "that should have been included with the Summary Plan Description booklet;" and (4) an example of application forms "that should have been provided by the service center…" (Trial Ex. K, p.2.) Previously, on January 10, 2012, Barton had requested an extension of time to file his appeal of the denial of pension benefits.

On February 21, 2012, Ms. Ebert-Feldman responded to Barton's requests.

BartonFindingsfnl.docx

On behalf of the Committee, she granted Barton's 60-day extension to file his appeal.  Her letter also states that she is enclosing documents.  (Trial Ex. J, p. 2.)  The enclosed documents consisted of:  (1) a five-page Claim 2011-6 Security Services Summary (Trial Ex. J, pp. 3-7)  ; (2) Claim 2011-6 documents submitted by Claimant (Barton) (Trial Ex. J, pp. 9-35) (3) documents from Claimant's pension file (Trial Ex. J, pp. 36-43); (4) Plan Documentation, including portions of The 1968 Plan, portions of an ADT Pension Plan, and The 1985 Plan; (Trial Ex. J, pp. 44- 61); (5) The 1968 Plan in its entirety  (Trial Ex. J, pp. 62-81); and, (6) The 1985 Plan in its entirety (Trial Ex. J, pp. 82-133).

Plaintiff, on cross-examination, testified that when he referred to the "Tyco International Summary Plan Description booklet," he was referring to the pension plan documents which pertained to him.  (Reporter's Transcript ("RT") 6/11/13 p. 26, ll. 12-21).  Barton sought the information because he wanted to know what the Committee based its ruling upon.  (RT 6/11/13 p.26, ll. 22-26.).

According to the documents enclosed in Ms. Ebert-Feldman's February 21, 2012 letter, Barton did receive a copy of portions of both The 1968 Plan and The 1985 Plan.  (Trial Ex. J, pp. 44-61.)   He also received a copy of these documents in their entirety.   (Trial Ex. J, pp. 62-133.)   According to Ms. Ebert-Feldman's testimony, she sought to provide Barton with all documents upon which the Committee based its decision.  (RT 6/11/13 at p. 66, ll. 5-11.)   The only other documents requested by Barton were his own social security documents, which are

contained within Trial Exhibit J, and exemplars.[12]

Even accepting plaintiff's view that Tyco failed to produce certain exemplars, the Court finds no prejudice.  Barton received The 1968 and 1985 Plans in their entirety.  He received portions of the same plans.  Barton filed his appeal within the requested time frame.  He offers no arguments as to how the failure to provide the exemplars inhibited his ability to prosecute his appeal.  In addition, there is no evidence of intentional malfeasance by Tyco.  As such, even assuming that Barton has standing to challenge the disclosure provisions and assuming the truth of his arguments, the court declines to exercise its discretion to impose sanctions.  For all of these reasons, the court does not award plaintiff any statutory penalties under section 502(c)(1) of ERISA.

Judgment is for Defendant.

Dated:  July 19, 2013

_____
Beverly Reid O'Connell
United States District Judge

_____
[12] ERISA § 502 requires that any production be made within 30 days.  29 U.S.C. § 1132(c).  Tyco produced the documents on the first business day after the thirtieth day.

BartonFindingsfnl.docx